E-FILED
Friday, 18 March, 2005  09:31:20 AM
Clerk, U.S. District Court, ILCD

IN THE CENTRAL DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
AT PEORIA

**FILED**

MAR **1 7** 2005

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Criminal No. 04-10084 |
| ) | |
| MELVIN J. CHANCEY, a/k/a ) | |
| ROAD and MEL, ) | |
| JAMES L. WHITE, a/k/a J.W., ) | VIO: 18 U.S.C. §1962(c), §1962(d) |
| DAVID G. OHLENDORF, a/k/a ) | 21 U.S.C. §§846 and |
| PULLEY, and ) | 841(b)(1)(A) |
| RICHARD A. ABRAMS, ) | |
| ) | |
| Defendants. ) | |

### SUPERCEDING INDICTMENT

The Grand Jury charges:

### COUNT ONE (RICO)
### (18 U.S.C. §1962(c))

#### THE ENTERPRISE

1.    At all times relevant to this indictment,

**MELVIN J. CHANCEY, a/k/a ROAD and MEL;
JAMES L. WHITE, a/k/a J.W.;
DAVID G. OHLENDORF, a/k/a PULLEY; and
RICHARD A. ABRAMS**

the defendants, and others known and unknown, were members and associates

of the Chicago, Rockford and Illinois Nomad (Spring Valley) Chapters of the

1

Hells Angels, a criminal enterprise whose members and associates engaged in a

pattern of racketeering activity involving attempted murder, robbery,

intimidation, extortion, attempted arson, narcotics distribution, and conspiracy to

do the same.

    2.    At various times relevant to this Indictment,

    a.    The Hells Angels Motorcycle Club, better known as (and

hereinafter referred to as) the Hells Angels, was an international organization.

    b.    Within the United States, the Hells Angels was composed of

individual chapters located in various locations throughout the United States.

Each chapter had a president, vice-president, treasurer/secretary and enforcer, as

well as general members.

    c.    The various chapters were grouped into two regions, the East

Region and the West Region.

    d.    Prior to 1994, the Illinois chapters of the Hells Angels were

Hells Henchmen chapters. The Hells Henchmen became Hells Angels in 1994.

    e.    The Chicago Chapter of the Hells Angels was a local chapter

of the Eastern Region of the international club. This chapter was active in the

northern Illinois and northwestern Indiana areas. From in or about October 14,

1993, (as Hells Henchmen) to in or about November 7, 1994, the chapter's

2

headquarters was located in a clubhouse at 1734 Grand Avenue, Chicago, Illinois.
From June 24, 1997, until the present, the chapter was housed in a clubhouse
located at 15609 South Halsted Road, Harvey, Illinois.  The chapter officers were
elected, and chapter members were identified by the apparel ("colors") and
emblems ("patches") they wore.

f.      The Rockford Chapter of the Hells Angels was a local chapter
of the Eastern Region of the international club.  This chapter was active in the
northwestern Illinois and southern Wisconsin areas.  From in or about July 1983,
(as Hells Henchmen) to in or about September 8, 1998, the chapter was housed in
a clubhouse located at 1622 W. State Street, Rockford, Illinois.  From September 8,
1998, until the present, the chapter's headquarters was located in a clubhouse at
1109 Rock Street, Rockford, Illinois.  The chapter officers were elected, and
chapter members were identified by the apparel ("colors") and emblems
("patches") they wore.

g.      The Illinois Nomad (Spring Valley) Chapter of the Hells
Angels was a local chapter of the Eastern Region of the international club.  This
chapter was active in the central and western Illinois areas.  This chapter did not
have a clubhouse but met in locations in the Central District of Illinois (McNabb,
Illinois) and the Northern District of Illinois (LaSalle, Illinois).  The chapter

3

officers were elected, and chapter members were identified by the apparel ("colors") and emblems ("patches") they wore.

3.      The Chicago, Rockford, and Illinois Nomad (Spring Valley) Chapters of the Hells Angels, including its leadership, membership and associates, constituted an "enterprise" as defined by Title 18, United States Code, Section 1961(4) (hereinafter "the enterprise"), that is, a group of individuals associated in fact. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. This enterprise was engaged in, and its activities affected, interstate and foreign commerce.

## PURPOSES OF THE ENTERPRISE

4.      The purposes of the enterprise included the following:

a.      Preserving and protecting the power, territory, and profits of the enterprise through the use of robbery, intimidation, extortion, and attempted arson.

b.      Enriching the members and associates of the enterprise through, among other things, robbery, intimidation, extortion, and narcotics distribution.

4

   c.  Promoting and enhancing the enterprise and its members' and

associates' activities.

   d.  Keeping victims in fear of the enterprise and in fear of its

members and associates through violence and threats of violence.

## ROLES OF THE DEFENDANTS

   5.  The defendants,

**MELVIN J. CHANCEY, a/k/a ROAD and MEL;<br>JAMES L. WHITE, a/k/a J.W.;<br>DAVID G. OHLENDORF, a/k/a PULLEY; and<br>RICHARD A. ABRAMS,**

participated in the operation and management of the enterprise, and acted as

leaders of the enterprise who directed other members of the enterprise in

carrying out unlawful and other activities in furtherance of the conduct of the

enterprise's affairs.

   a.  Defendant Melvin J. Chancey, a/k/a Road and Mel, became a

member of the Chicago Chapter of the Hells Angels in or about 1994. He was

President of the Chicago Chapter from 1997 until 1999.

   b.  James L. White, a/k/a J.W., became a member of the Rockford

Chapter in or about 1994 and was the chapter Treasurer in 1997. He became the

chapter President in 1998 and continued in that position until at least the date of

this indictment.

5

c.      David G. Ohlendorf, a/k/a Pulley, was a rank and file

member of the Chicago Chapter from in or about 1994 through 2001. In 2002, he

became a member of the Illinois Nomad (Spring Valley) Chapter and held the

position of President until at least the date of this indictment.

d.      Richard A. Abrams was a member of the Rockford Chapter

from in or about 1994 through 2001, and was Vice President from 1997 through

2001. In 2002, Abrams became a member of the Illinois Nomad (Spring Valley)

Chapter and held the position of Secretary-Treasurer until at least the date of this

indictment.

## MEANS AND METHODS OF THE ENTERPRISE

6.      Among the means and methods by which the defendants and their

associates conducted and participated in the conduct of the affairs of the

enterprise were the following:

a.      Members of the enterprise and their associates conspired to

commit, threatened to commit, and committed racketeering acts involving

murder, robbery, intimidation, extortion, and arson to protect and expand the

enterprise's criminal operations.

b.      Members of the enterprise and their associates used and

threatened to use physical violence against various individuals.

6

c.    Members of the enterprise and their associates possessed, transported and used firearms, and other deadly weapons and destructive devices, including pipe bombs, for various purposes, including protection and intimidation, and to otherwise further the goals of the enterprise.

d.    Members of the enterprise and their associates trafficked in cocaine and methamphetamine.

e.    Members of the enterprise and their associates claimed geographic territories as the exclusive territory of the Hells Angels and asserted that no other motorcycle clubs could operate or display "colors" within said territories without the consent of the Hells Angels.

f.    Members of the enterprise and their associates committed acts of violence, intimidation, and threats against members and associates of rival motorcycle clubs.

g.    Leaders of the enterprise and their associates withheld benefits and privileges and threatened to withhold benefits and privileges from other members of the enterprise, and ordered the payment of fines by other such members for failing to abide by the rules of the organization. These punishments were used by the leaders of the enterprise in order to further the goals of the enterprise and to avoid detection by law enforcement authorities.

7

h.     Members of the enterprise and their associates used threats,

intimidation, and physical force against individuals with the intent to hinder,

delay, and prevent the communication to law enforcement authorities of

information related to the commission and probable commission of criminal

offenses.

i.     Members of the enterprise and their associates traveled in

interstate commerce in order to further the goals of the enterprise.

## THE RACKETEERING VIOLATION

7.     From in or about 1994, through in or about the present, in the

Central District of Illinois and elsewhere,

**MELVIN J. CHANCEY, a/k/a ROAD and MEL;**
**JAMES L. WHITE, a/k/a J.W.;**
**DAVID G. OHLENDORF, a/k/a PULLEY; and**
**RICHARD A. ABRAMS,**

together with others known and unknown to the grand jury, being persons

employed by and associated with the enterprise described above, which was an

enterprise engaged in, and the activities of which affected, interstate and foreign

commerce, unlawfully and knowingly conducted and participated, directly and

indirectly, in the conduct of the affairs of the enterprise through a pattern of

racketeering activity, to wit: through the commission of  Racketeering Acts 1

through 12, as set forth below.

8

## THE PATTERN OF RACKETEERING ACTIVITY

8.     The pattern of racketeering activity as defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisted of the following acts:

### Racketeering Act 1A
### (Conspiracy to Commit Murder)

9.     In or about June 1994, in Cook County, Illinois,

**MELVIN J. CHANCEY, a/k/a ROAD and MEL,**
**and**
**DAVID G. OHLENDORF, a/k/a PULLEY,**

committed an act involving murder, with intent to kill and without lawful justification, in that the defendants, unlawfully and knowingly conspired and agreed with each other, and with others, to commit the offense of First Degree Murder, in violation of Section 9-1(a)(1) of Act 5 of Chapter 720 of the Illinois Compiled Statutes, and performed an act in furtherance of that agreement by shooting the chapter president of another motorcycle club in the right chest and right leg while he was riding a motorcycle on an expressway, in violation of Section 8-2(a) of Act 5 of Chapter 720 of the Illinois Compiled Statutes.

### Racketeering Act 1B
### (Attempted Murder)

10.     On or about June 25, 1994, in Cook County, Illinois,

**MELVIN J. CHANCEY, a/k/a ROAD and MEL,**
**and**

9

## DAVID G. OHLENDORF, a/k/a PULLEY,

committed an act involving murder, in that the defendants, with the intent to kill

an individual, and without lawful justification, unlawfully and knowingly

performed a substantial step toward committing First Degree Murder, by

shooting the chapter president of another motorcycle club in the right chest and

right leg while he was riding a motorcycle on an expressway, in violation of

Sections 8-4(a) and 9-1(a)(1) of Act 5 of Chapter 720 of the Illinois Compiled

Statutes.

### Racketeering Act 2A
### (Attempted Murder)

11.    In or about March 1995, in Kankakee County, Illinois,

### MELVIN J. CHANCEY, a/k/a ROAD and MEL,

and others, committed an act involving murder, in that the defendant, with the

intent to kill an individual, and without lawful justification, unlawfully and

knowingly performed a substantial step toward committing First Degree Murder

by transporting firearms and pipe bombs to Kankakee, Illinois, for the purpose of

locating and killing members of another motorcycle club, in violation of Sections

8-4(a) and 9-1(a)(1) of Act 5 of Chapter 720 of the Illinois Compiled Statutes.

### Racketeering Act 2B
### (Attempted Arson)

10

12.     In or about March 1995, in Kankakee County, Illinois,

**MELVIN J. CHANCEY, a/k/a ROAD and MEL,**

and others, committed an act involving arson in that the defendant, with the

intent to commit arson, unlawfully and knowingly performed a substantial step

toward committing arson when he transported a pipe bomb to Kankakee,

Illinois, for the purpose of bombing the clubhouse of another motorcycle club, in

violation of Sections 8-4(a) and 20-1(a) of Act 5 of Chapter 720 of the Illinois

Compiled Statutes.

### Racketeering Act 2C
### (Conspiracy to Commit Arson)

13.     In or about March 1995, in Kankakee County, Illinois,

**MELVIN J. CHANCEY, a/k/a ROAD and MEL,**

and other persons, committed an act involving arson, in that the defendant

unlawfully and knowingly conspired and agreed with others to commit arson, in

violation of Section 20-1(a) of Act 5 of Chapter 720 of the Illinois Compiled

Statutes and performed an act in furtherance of that agreement, in that he and

other persons traveled to Kankakee County for the purpose of bombing another

motorcycle club's clubhouse, all in violation of Section 8-2(a) of Act 5 of Chapter

720 of the Illinois Compiled Statutes.

11

## Racketeering Act 3
## (Attempted Extortion)

14.     a.     At all times relevant to this racketeering act, the Skybox
Lounge was engaged in operating an establishment in interstate commerce and
an industry which affects interstate commerce.

        b.     In or about early 1997, in Cook County and elsewhere,

### MELVIN J. CHANCEY, a/k/a ROAD and MEL,

and others, did unlawfully obstruct, delay, and affect and attempt to obstruct,
delay, and affect commerce as that term is defined in Title 18, United States
Code, Section 1951, and the movement of articles and commodities in such
commerce, by extortion, as that term is defined in Title 18, United States Code,
Section 1951, in that the defendant did obtain and attempt to obtain the property
of the Skybox Lounge and its employees with their consent having been induced
by the wrongful use of actual and threatened force, violence and fear, in that the
defendant told the lounge's employees that, unless Hells Angels were permitted
to enter the lounge without paying a cover charge, the Hells Angels would bomb
the lounge and customers' cars and kill the employees and everyone else in the
lounge.

     All in violation of Title 18, United States Code, Section 1951.

12

## Racketeering Act 4
## (Robbery)

15.    On or about July 3, 1997, in Cook County, Illinois,

### MELVIN J. CHANCEY, a/k/a ROAD and MEL,
### and
### DAVID G. OHLENDORF, a/k/a PULLEY,

and others, committed an act involving robbery, in that said defendants

unlawfully and knowingly took property, being a Harley Davidson motorcycle,

clothing, and jewelry, from the person and presence of a former member of the

Hells Angels, referred to hereinafter as M.M., by the use of force – that is, by

physically beating M.M. and breaking his jaw – and threatening the imminent

use of more force, in violation of Section 18-1 of Act 5 of Chapter 720 of the

Illinois Compiled Statutes.

## Racketeering Act 5A
## (Conspiracy to Commit Murder)

16.    On or about September 25, 1997, in Winnebago County, Illinois,

### JAMES L. WHITE, a/k/a J.W.,
### and
### RICHARD A. ABRAMS,

and others, committed an act involving murder, with intent to kill and without

lawful justification, in that the defendants unlawfully and knowingly conspired

and agreed with each other and with others to commit the offense of First Degree

Murder in violation of Section 9-1(a)(1) of Act 5 of Chapter 720 of the Illinois

Compiled Statutes and performed an act in furtherance of that agreement by

taking steps to murder a member of another motorcycle club by forcibly entering

a private residence in order to find and kill a member of that club, in violation of

Section 8-2(a) of Act 5 of Chapter 720 of the Illinois Compiled Statutes.

## Racketeering Act 5B
## (Attempted Murder)

17.     On or about September 25, 1997, in Winnebago County, Illinois,

## JAMES L. WHITE, a/k/a J.W.,
## and
## RICHARD A. ABRAMS,

and others, committed an act involving murder, in that the defendants, with the

intent to kill an individual, and without lawful justification, unlawfully and

knowingly performed a substantial step toward committing First Degree Murder

against a member of another motorcycle club when, without lawful justification

and while armed with a dangerous weapon, they forcibly entered a residence

with the intent to kill a member of the other club, in violation of Sections 8-4(a)

and 9-1(a)(1) of Act 5 of Chapter 720 of the Illinois Compiled Statutes.

## Racketeering Act 6A
## (Conspiracy to Commit Murder)

18.     In or about December 1997, in Cook County, Illinois,

14

**MELVIN J. CHANCEY, a/k/a ROAD and MEL,**
**and**
**DAVID G. OHLENDORF, a/k/a PULLEY,**

and others, committed an act involving murder, with intent to kill and without

lawful justification, in that the defendants unlawfully and knowingly conspired

and agreed with each other to commit the offense of First Degree Murder, in

violation of Section 9-1(a)(1) of Act 5 of Chapter 720 of the Illinois Compiled

Statutes, and performed an act in furtherance of that agreement by taking steps

to murder an individual who is referred to as B.K., in violation of Section 8-2(a)

of Act 5 of Chapter 720 of the Illinois Compiled Statutes.

**Racketeering Act 6B**
**(Attempted Murder)**

19.     On or about December 15, 1997, in Cook County, Illinois,

**MELVIN J. CHANCEY, a/k/a ROAD and MEL,**
**and**
**DAVID G. OHLENDORF, a/k/a PULLEY,**

and another person, committed an act involving murder, in that they, with the

intent to kill an individual, and without lawful justification, unlawfully and

knowingly performed a substantial step toward committing First Degree

Murder, when they went to a residence in Evergreen Park, Illinois, waited for an

individual who is referred to hereinafter as B.K., beat B.K. with fists, feet and a

baseball bat, bound B.K. with duct tape, placed the barrel of a handgun in B.K.'s

15

mouth, and pulled the trigger, in violation of Sections 8-4(a) and 9-1(a)(1) of Act 5 of Chapter 720 of the Illinois Compiled Statutes.

### Racketeering Act 7
### (Robbery)

20.    On or about January 6, 1998, in Winnebago County, Illinois,

### JAMES L. WHITE, a/k/a J.W.,
### and
### RICHARD A. ABRAMS,

and others, committed an act involving robbery, in that said defendants

unlawfully and knowingly took property, being a Harley Davidson motorcycle,

the title for the Harley Davidson motorcycle, and clothing, from the person and

presence of a former member of the Hells Angels, hereinafter referred to as A.T.,

by the use of force and threatening the imminent use of force, in violation of

Section 18-1 of Act 5 of Chapter 720 of the Illinois Compiled Statutes, when they

beat and kicked A.T. and demanded that he surrender to them his motorcycle, its

title and certain clothing.

### Racketeering Act 8A
### (Conspiracy to Commit Arson)

21.    In or about May 1998, in Stephenson County, Illinois and elsewhere,

### JAMES L. WHITE, a/k/a J.W.,

16

and another person, committed an act involving arson in that the defendant

unlawfully and knowingly conspired and agreed with others to commit arson in

violation of Section 20-1(a) of Act 5 of Chapter 720 of the Illinois Compiled

Statutes and performed an act in furtherance of that agreement, in that he and

another person agreed to locate and set fire to another motorcycle club's

clubhouse in Davis, Illinois, all in violation of Section 8-2(a) of Act 5 of Chapter

720 of the Illinois Compiled Statutes.

## Racketeering Act 8B
## (Attempted Arson)

22.    On or about May 25, 1998, in Stephenson County, Illinois,

### JAMES L. WHITE, a/k/a J.W.,

and another person, committed an act involving arson in that, with the intent to

commit arson, they unlawfully and knowingly performed a substantial step

toward committing arson, when they drove to Davis, Illinois, to conduct

surveillance of the clubhouse of another motorcycle club and developed plans to

burn down the clubhouse by spraying or pouring gasoline on the inside of the

clubhouse and igniting the gasoline with candles or flares, in violation of Sections

8-4(a) and 20-1(a) of Act 5 of Chapter 720 of the Illinois Compiled Statutes.

17

## Racketeering Act 9
## (Witness Tampering)

23.    On or about January 10, 1999, in Cook County, Illinois, and
elsewhere,

### JAMES L. WHITE, a/k/a J.W.,

and others, did knowingly intimidate, use physical force against, threaten,

attempt to intimidate, attempt to use physical force against, and attempt to

threaten a former Hells Angels member, hereinafter referred to as R.R., with the

intent to hinder, delay, and prevent the communication to a law enforcement

officer, (which, in fact, included a federal law enforcement officer) of information

relating to the commission or possible commission of a Federal Offense, namely

Racketeering, in violation of Title 18, United States Code, Section 1962(c), and

Conspiracy to Commit Racketeering, in violation of Title 18, United States Code,

Section 1962(d), in that the defendant forcibly entered R.R.'s private residence

and drew a handgun from his waistband for the purpose of shooting or

threatening R.R. whom the defendant believed was cooperating with law

enforcement officials.

All in violation of Title 18, United States Code, Section 1512(b)(3).

18

## Racketeering Act 10A
## (Conspiracy to Murder)

24.    In or about spring and summer of 2002, in Peoria County, Illinois,
and elsewhere,

### DAVID G. OHLENDORF, a/k/a PULLEY,

and others, committed an act involving murder, with intent to kill and without

lawful justification, in that the defendant unlawfully and knowingly conspired

and agreed with others to commit the offense of First Degree Murder, in

violation of Section 9-1(a)(1) of Act 5 of Chapter 720 of the Illinois Compiled

Statutes, and performed an act in furtherance of that agreement by taking steps

to murder a member of another motorcycle club in that they made plans to travel

to Peoria, Illinois and kill members of the other motorcycle club, in violation of

Section 8-2(a) of Act 5 of Chapter 720 of the Illinois Compiled Statutes.

## Racketeering Act 10B
## (Attempted Murder)

25.    In or about the spring and summer of 2002, in Peoria County,
Illinois, and elsewhere,

### DAVID G. OHLENDORF, a/k/a PULLEY,

and others, committed an act involving murder, in that, with the intent to kill an

individual, and without lawful justification, they unlawfully and knowingly

19

performed a substantial step toward committing First Degree Murder, when the

defendant directed the others to arm themselves, travel to Peoria, Illinois, and kill

members of another motorcycle club there and the others in fact possessed and

carried firearms and firearm ammunition to Peoria to carry out that plan, in

violation of Sections 8-4(a) and 9-1(a)(1) of Act 5 of Chapter 720 of the Illinois

Compiled Statutes.

### Racketeering Act 11A
### (Conspiracy to Commit Murder)

26.    In or about August 2002, in Peoria County, Illinois, and LaSalle

County, and elsewhere,

### DAVID G. OHLENDORF, a/k/a PULLEY;
### JAMES L. WHITE, a/k/a J.W.; and
### RICHARD A. ABRAMS,

and others, committed an act involving murder, with intent to kill and without

lawful justification, in that the defendants, unlawfully and knowingly conspired

and agreed with each other to commit the offense of First Degree Murder, in

violation of Section 9-1(a)(1) of Act 5 of Chapter 720 of the Illinois Compiled

Statutes, and performed an act in furtherance of that agreement by taking steps

to murder a member of another motorcycle club, in that they and others made

plans to locate and murder members of the other club at the Route 66 Speedway,

20

in violation of Section 8-2(a) of Act 5 of Chapter 720 of the Illinois Compiled

Statutes.

## Racketeering Act 11B
### (Attempted Murder)

27.    In or about August 2002, in Peoria County, Illinois and LaSalle

County, and elsewhere,

### DAVID G. OHLENDORF, a/k/a PULLEY;
### JAMES L. WHITE, a/k/a J.W.; and
### RICHARD A. ABRAMS,

and others, committed an act involving murder, in that, with the intent to kill a

member of another motorcycle club, and without lawful justification, they

unlawfully and knowingly performed a substantial step toward committing First

Degree Murder, when the defendants planned and directed others to carry out

the plans to locate and murder members of another motorcycle club at the Route

66 Speedway, in violation of Section 8-4(a) and 9-1(a)(1) of Act 5 of Chapter 720

of the Illinois Compiled Statutes.

## Racketeering Act 12
### (Narcotics Distribution Conspiracy)

28.    a.    From in or about 1993 to in or about 2002, within the Central

and Northern Districts of Illinois and elsewhere,

### MELVIN J. CHANCEY, a/k/a ROAD and MEL;
### JAMES L. WHITE, a/k/a J.W.;

21

1:04-cr-10084-MMM-JAG  # 110  Page 22 of 29

## DAVID G. OHLENDORF, a/k/a PULLEY; and
## RICHARD A. ABRAMS,

knowingly combined, conspired, and agreed with each other and with others to

commit certain acts in violation of the laws of the United States, to-wit: (A) to

knowingly possess with intent to distribute cocaine, a Schedule II controlled

substance; (B) to knowingly distribute cocaine, a Schedule II controlled

substance, (C) to knowingly possess with intent to distribute methamphetamine,

a Schedule I controlled substance, and (D) to knowingly distribute

methamphetamine, a Schedule I controlled substance, all in violation of Title 21,

United States Code, Section 841(a)(1).

      b.     It was part of the conspiracy that, at various times, certain

defendants possessed cocaine and methamphetamine with intent to distribute it

and actually distributed cocaine and methamphetamine.

      c.     This conspiracy involved the agreement to distribute more

than twenty kilograms of cocaine and more than twenty kilograms of meth-

amphetamine.

      d.     In furtherance of the conspiracy and to accomplish its

objectives of possessing with intent to distribute and distributing cocaine and

methamphetamine, the defendants and others committed overt acts, including

but not limited to the following: obtaining cocaine and methamphetamine,

transporting cocaine and methamphetamine, weighing and repackaging cocaine

and methamphetamine, distributing cocaine and methamphetamine, and

collecting money from the sale of cocaine and methamphetamine.

All in violation of Title 21, United States Code, Sections 846 and

841(b)(1)(A).

All in violation of Title 18, United States Code, Section 1962(c).

### COUNT TWO
### (The Racketeering Conspiracy)

The Grand Jury further charges:

1.     Paragraphs 1 - 6 in Count One are hereby realleged and

incorporated as if fully set forth herein.

2.     From in or about 1994 through in or about 2002,  both dates being

approximate and inclusive, within the Central District of Illinois and elsewhere,

the defendants,

**MELVIN J. CHANCEY, a/k/a ROAD and MEL;
JAMES L. WHITE, a/k/a J.W.;
DAVID G. OHLENDORF, a/k/a PULLEY; and
RICHARD A. ABRAMS,**

together with others, being others employed by and associated with the Chicago,

Rockford, and Illinois Nomad (Spring Valley) Chapters of the Hells Angels

23

Motorcycle Club, an enterprise which engaged in, and the activities of which affected interstate commerce, knowingly and intentionally conspired to violate 18 U.S.C. §1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as that term is defined by 18 U.S.C. § 1961 (1) and (5).  The pattern of racketeering activity through which the defendants agreed to conduct the affairs of the enterprise consisted of the specific acts set forth in Paragraphs 9 - 28 in Count One of this Indictment.

3.     It was further part of the conspiracy that the defendants agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

All in violation of Title 18, United States Code, Section 1962(d).

## COUNT THREE
### (Narcotics Distribution Conspiracy)

1.     From in or about 1993 to in or about 2002, within the Central District of Illinois and elsewhere,

**MELVIN J. CHANCEY, a/k/a ROAD and MEL;**
**JAMES L. WHITE, a/k/a J.W.;**
**DAVID G. OHLENDORF, a/k/a PULLEY; and**
**RICHARD A. ABRAMS,**

24

the defendants herein, knowingly combined, conspired and agreed with each other and with others to commit certain acts in violation of the laws of the United States, to-wit: (A) to knowingly possess with the intent to distribute cocaine, a Schedule II controlled substance; and (B) to knowingly distribute cocaine, a Schedule II controlled substance, (C) to knowingly possess with intent to distribute methamphetamine, a Schedule I controlled substance, and (D) to knowingly distribute methamphetamine, a Schedule I controlled substance, all in violation of Title 21, United States Code, Section 841(a)(1).

2.    It was part of the conspiracy that certain of the defendants would at various times possess cocaine and methamphetamine with intent to distribute and distribute cocaine and methamphetamine.

3.    This conspiracy involved the agreement to distribute more than twenty kilograms of cocaine and more than twenty kilograms of methamphetamine.

4.    In furtherance of the conspiracy and to accomplish its objectives of possessing with intent to distribute and distributing cocaine and methamphetamine, the defendants and others committed overt acts, including but not limited to the following: obtaining cocaine and methamphetamine, transporting cocaine and methamphetamine, weighing and repackaging cocaine

25

and methamphetamine, distributing cocaine and methamphetamine, and collecting money from the sale of cocaine and methamphetamine.

All in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A).

## COUNT FOUR
## (FORFEITURE - RICO)

1.      Pursuant to Title 18, United States Code, Section 1963(a), each defendant who is convicted of the offense set forth in Counts One and Two shall forfeit to the United States the following property:

a.      Any interest acquired or maintained in violation of Section 1962;

b.      Any interest in, security of, claim against, or property or contractual rights of any kind affording a source of influence over the enterprise described in Counts One and Two which was established, operated, controlled and conducted in violation of Title 18, United States Code, Section 1962;

c.      Any property constituting or derived from proceeds obtained directly and indirectly from racketeering activity in violation of Title 18, United States Code, Section 1962;

26

2. The interests of the defendants subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1), (a)(2), and (a)(3), include, but are not limited to:

    a. at least \$816,000.

The United States seeks a judgment in favor of the United States against each of the defendants for that amount. If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the amount subject to forfeiture under this paragraph.

3. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants-

    a. Cannot be located upon the exercise of due diligence;

    b. Has been transferred or sold to, or deposited with, a third person;

    c. Has been placed beyond the jurisdiction of the court;

    d. Has been substantially diminished in value; or

    e. Has been commingled with other property which cannot be subdivided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of any other real or personal property of the said defendants up to the value of the above forfeitable property.

27

## COUNT FIVE
## (FORFEITURE - NARCOTICS DISTRIBUTION CONSPIRACY)

1.    Pursuant to Title 21, United States Code, Section 853, each defendant who is convicted of the offense set forth in Count Three shall forfeit to the United States the following property:

a.    Any property constituting or derived from proceeds obtained directly and indirectly from the cocaine and methamphetamine distribution conspiracy in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A);

b.    Any property used, or intended to be used, in any manner or part, to commit or to facilitate the commission of the cocaine and methamphetamine distribution conspiracy in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A);

2.    The property subject to forfeiture pursuant to paragraph 1 includes, but is not limited to, the following:

a.    A sum of money in the proximate amount of $624,000.00 which represents the proceeds derived from the criminal conduct described in Count Three of this indictment and which is subject to forfeiture to the United States of America pursuant to Title 21 United States Code, Section 853(a)(1). The United States seeks a judgment in favor of the United States against each of the

28

defendants for that amount. If more than one defendant is convicted of an
offense, the defendants so convicted are jointly and severally liable for the
amount subject to forfeiture under this paragraph.

    3.    If any of the property described above as being subject to forfeiture,
as a result of any act or omission of the defendants-

        a.    Cannot be located upon the exercise of due diligence;

        b.    Has been transferred or sold to, or deposited with, a third
             person;

        c.    Has been placed beyond the jurisdiction of the court;

        d.    Has been substantially diminished in value; or

        e.    Has been commingled with other property which cannot be
             subdivided without difficulty;

it is the intention of the United States, pursuant to Title 21, United States Code,
Section 853(p), to seek forfeiture of any other real or personal property of the said
defendants up to the value of the above forfeitable property.

A True Bill,

S/Fore person

**Foreperson**

S Sara Darrow

**JAN PAUL MILLER**
UNITED STATES ATTORNEY
KTC/ksr

29